**SUBMARINE SIGNAL CORPORATION v. GENERAL RADIO CO. et al.**

(District Court, D. Massachusetts. July 20, 1926.)

No. 2450.

**1. Patents ⚖=42—Test of invention is not in novelty of idea, but is objective and in novelty of result of the idea.**

The test of invention is objective, and is not in the novelty of an idea, but in the novelty of the result of the idea, and if this results in a machine or process involving a new function, or an old function arrived at by new means, the embodiment of the idea is patentable.

**2. Patents ⚖=328.**

The Fessenden patent, No. 1,217,585, for method of measuring distance by sound inflection, *held* not anticipated and valid, and claims 1, 2, 3, 4, 5, and 21 *held* infringed.

In Equity. Suit by the Submarine Signal Corporation against the General Radio Company and another. Decree for complainant.

Alex D. Salinger and Fish, Richardson & Neave, all of Boston, Mass., for plaintiff.

George K. Woodworth, of Boston, Mass., for defendants.

LOWELL, District Judge. This was a bill in equity for the infringement of letters patent No. 1,217,585, granted on February 27, 1917, to R. A. Fessenden. A preliminary question in regard to the title was decided in favor of the plaintiff, to whom the patentee had assigned his invention. The defendants were sued as contributory infringers. They made an apparatus known as the "sonic depth finder," which is principally used in the United States Navy for taking soundings in deep water in connection with the making of charts. One of the defendants' devices was sold to the All-America Cable Company, and used by them; this transaction gave rise to the present suit.

The invention relates to measuring distances by determining the length of time which elapses between the emission of a sound and the echo. This is done by causing a sound to be made by an electric impulse; the echo is received by an instrument which produces an electric impulse; and the time between the two impulses is then measured. In brief, the invention set forth in the specification consisted in producing a sound by an "oscillator" operated by electricity, which emitted the sound without the intervention of mechanical means. The echo was also received on the oscillator, or, alternatively, on a different kind of receiving instrument, by means of which the sound vibrations set up electric pulsations.

The use of the invention complained of was in determining depths of water at sea. Sound travels in sea water at the rate of about 4,800 feet a second. As it travels to the bottom and back, the elapsed time is just twice that required by the sound to reach the bottom. In one one-hundredth of a second sound travels 48 feet in sea water. It will be seen that, if the echo returns in one one-hundredth of a second, the depth of water would be one-half of 48, or 24 feet. Accuracy is therefore necessary when the apparatus is used to warn ships of their approach to land, though not of so much importance in deep water, when it is used to make a chart of the ocean floor.

In the plaintiff's device, as set forth in his specification, the elapsed time is measured from the electric impulse which energizes the oscillator to the electric impulse made by the echo; in this sense the apparatus in automatic, although it requires human agency to adjust the means for recording the impulses. In the defendants' apparatus the elapsed time is measured between two sounds emitted by an oscillator. The echo issued only as a guide to vary the time between signals. This is done by changing the speed of the oscillator. The operator has a telephone receiver at each ear. In the right ear he hears only the sounds emitted by the oscillator; in the

left ear only the sounds produced by the echo. He changes the speed of the oscillator, so that a second signal exactly corresponds to the receipt of the echo of the first. When the sounds are thus synchronized, the time between the two emitted signals is measured, and in this way depth is determined, as the second signal corresponds with the echo. It will be apparent from the above description that the speed of the plaintiff's oscillator is kept constant, while that of the defendants' is varied.

The following claims were sued on: 1, 2, 3, 4, 5, and 21. They read as follows:

"1. The method of measuring distance by sound inflection which consists in varying the current in an electric circuit at the sending end, setting up at the sending end sound vibrations identical in time with the current variations in said electric circuit, directing said sound vibrations against an objective, transforming the sound vibrations inflected by said objective when received into electric impulses identical in time with said received sound vibrations and measuring the time elapsing between the beginning of each set of electric impulses.

"2. The method of measuring distance by sound inflection which consists in varying the current in an electric circuit at the sending end, setting up at the sending end sound vibrations identical in character with the current variations in said electric circuit, directing said sound vibrations against an objective, transforming the sound vibrations inflected by said objective when received into electric impulses identical in character with said received sound vibrations and measuring the time elapsing between the beginning of each set of electric impulses.

"3. The method of measuring distance by sound inflection which consists in varying the current in an electric circuit at the sending end, setting up at the sending end sound vibrations identical in frequency with the current variations in said electric circuit, directing said sound vibrations against an objective, transforming the sound vibrations inflected by said objective when received into electric impulses identical in frequency with said received sound vibrations and measuring the time elapsing between the beginning of each set of electric impulses.

"4. The method of measuring distance by sound inflection which consists in varying the current in an electric circuit at the sending end, setting up at the sending end sound vibrations identical in time, character, and frequency with the current variations in said electric circuit, directing said sound vibra-

tions against an objective, transforming the sound vibrations inflected by said objective when received into electric impulses identical in time, character, and frequency with said received sound vibrations and measuring the time elapsing between the beginning of each set of electric impulses.

"5. The method of measuring distance by sound inflection which consists in transforming electrical impulses into sound vibrations for a predetermined period, which sound vibrations are directed against the objective, transforming the sound vibrations which are inflected by said objective into electrical impulses and measuring the time between the commencement of said predetermined period and the first receipt of said inflected impulses."

"21. That method of measuring distance which consists in varying the current in an electromagnetic mechanism, causing the forces so produced to act directly and positively upon a diaphragm thereby setting the diaphragm in motion and setting up sound vibrations, directing said sound vibrations against an objective thereby inflecting the vibrations, receiving said inflected vibrations and measuring the elapsed time between the setting up of the vibrations and their reception."

The word "frequency" is used to denote the rapidity of the electric pulsations, which affects the pitch of the sound. "Character" was explained as being the equivalent of "timbre," which affects the quality of the sound in a musical note or in human speech.

The defenses are: (1) Anticipation by one Eels; (2) that the invention shows no patentable novelty over the prior art, and especially over an apparatus devised by one Berggraf; (3) that the claims are merely for the function of a machine; and (4) that the defendants do not infringe.

The first defense requires little comment. Eels had used an apparatus which sent out a sound by means of an electric bell, and stated in United States letters patent No. 837,551, granted December 4, 1907, that the echo might be received by a telephone receiver. He had no idea, however, of the plaintiff's method of taking time between two electric impulses.

Many patents were cited as anticipations of the plaintiff's invention, but the defense in this part of the case was grounded chiefly on Berggraf's description of an apparatus for measuring depths.

The Berggraf device consisted of a complicated series of magnets and levers, which cannot be described without reproducing the

figure. Sound is produced by a hammer striking a diaphragm. The echo is received by a microphone. In this part of the apparatus there is used a resonator of such character that only the sounds given out by the diaphragm will set it in motion, and in this way only those sounds will affect the recording apparatus. Berggraf had no conception of the main feature of Fessenden's patent—that the sound vibrations sent out should be of the same frequency and character as the electric impulses which caused them. The resonator is necessary to select the proper sounds, which shall be allowed to actuate the recording mechanism. If Fessenden's idea had been present in Berggraf's mind, he would have produced the sounds by electricity, without intervening mechanical means, and the resonator would not have been necessary.

The principal point insisted on by the defendants, however, is that Berggraf had conceived the idea of identity in time between the electric impulse and the sound on the sending end, and the sound and the electric impulse on the receiving end. They contended that Fessenden showed no invention over Berggraf, as all that was necessary was to substitute for the hammer and diaphragm of Berggraf the electrically operated bell of Gray and Mundy, which was shown in their United States letters patent No. 636,519, granted November 7, 1899. The defendants' argument is to the effect that Berggraf showed the principle of the Fessenden method, and all that was then necessary was to perfect the apparatus, and get rid of the lag between the electrical impulses and the recording mechanism. The fallacy of this argument lies in the fact that Berggraf did not have any conception of the basic idea of Fessenden's invention. Berggraf recorded the time which elapsed between two sounds—not between two electric impulses.

The echo method of determining distances under water was not new with Fessenden. He refers to it in his specification. The problem to be solved was to devise an apparatus which would measure the lapse of time so accurately as to be of practical use in determining short distances. Speed of sound in sea water is such that, as we have seen, an error of one one-hundredth of a second, corresponding to a depth of twenty-four feet, would be so great as to render of no value an apparatus subject to such an error, if it were used in shallow water. The idea at the base of the invention was that of measuring time between two electric impulses. The prior art showed many different devices for producing sounds, for determining the direction from which the echo came, and, in a general way, for ascertaining the distance of the object which caused the echo.

Fessenden's idea was to change electric pulsations into sound vibrations of the same kind, and then to change the echoing sound vibration back again into electric pulsations of the same kind as the sound vibrations. This is expressed in his claims by describing them as identical in time, character, and frequency. The phrase "identical in time" explains itself. "Identical in frequency" means that the sound waves and the electric undulations are sent out at the same rate per second; on the frequency of sound waves the pitch of a sound depends. The word is most often used in describing a musical note. "Character" was explained to be the same as the timbre of a musical note. The word "timbre" is used also in connection with sound waves caused by the human voice, or of the cries of animals or songs of birds. The form of a sound wave determines its character. This gives what is often called the "quality" of a musical note.

Fessenden discovered that the identity in time, character and frequency set up between sound waves and electric undulations enabled him to dispense with all apparatus except electrical ones. He produced a sound electrically, and he received the echo by an electrical instrument. The latter feature allowed him to do away with all extra devices for selecting the required sound from others which might occur, such as the noise made by waves or sounds within the body of a ship. The apparatus was quite different from anything known in the prior art. It is akin to Bell's discovery of the telephone, and is treated as such by the solicitor who drew the specification.

The defendants rely principally upon the Berggraf device as showing an anticipation of the plaintiff's invention. They adopt the conventional method of testing an invention, by contending that a person skilled in the art, having this device at hand, could produce the plaintiff's apparatus by certain changes. This contention shows the unsatisfactory nature of the "skilled mechanic" criterion of invention.

[1] A test of invention may be either subjective or objective. We may determine either the novelty of an idea or the novelty of the result of this idea. The first test is impracticable. Psychology is not yet so exact a science as to allow us to classify and arrange in order of importance the ideas of

the human brain. Nor does it assist us to substitute for the brain of the patentee, whose idea we are criticizing, the brain of that imaginary person of the patent law, the skilled mechanic. The test is still that of the relative importance of ideas.

George L. Roberts, Esq., of the Suffolk bar, has considered this subject in an unpublished treatise which I have been privileged to study. He shows that the true test of invention is the novelty of the result, and that this result must be criticized by comparing it with the machines, processes, or methods known before. The test is an objective one. If the result of an idea is a machine or process involving a new function, or an old function arrived at by new means, the embodiment of the idea is patentable. In an exhaustive survey of all the cases relating to the question of patentable novelty in the Supreme Court of the United States, from the earliest times down to 1915, Mr. Roberts has shown that the test above suggested is consistent with them all, with three exceptions, which he regards as anomalous.

[2] The method devised by Fessenden was new. The test of patentable novelty is, as we have seen, whether some new result is brought about by new means, or by a new arrangement of old ones. In my opinion, the method discovered by Fessenden involved a new function, which was not set forth in the prior art.

The contention of the defendant that the claims in suit involved merely the operation of a machine, and are therefore void as claims covering only the function of the machine, is untenable. Fessenden discovered a new method. The Telephone Cases are ample authority for the support of his claims, which were very skillfully drawn, with the fifth claim of one of Bell's patents as a model. This claim was upheld in the Telephone Cases, 126 U. S. 1, 8 S. Ct. 778, 31 L. Ed. 863. See, also, American Bell Telephone Co. v. Dolbear (C. C.) 15 F. 448.

On the question of infringement, the defendants contended that their device does not measure time, but only the number of signals sent out each second by the oscillator after it has been synchronized with the echo in the manner before described. It is difficult to understand the argument; but, whatever be the idea at its base, it is fundamentally unsound, since the art of determining depths by the echo method depends wholly on the lapse of time between the signal and the receipt of the answering echo.

In my opinion, all the features of the plaintiff's claims are present in the defendants' apparatus.

Identity of Time (Claim 1).—The sound is produced by an oscillator in practically the same way as in the Fessenden patent.

Identity in Character (Claim 2).—The echo was received by a microphone in the same way as in the Fessenden patent, and there is no need of the addition of a resonator, such as was contained in the Berggraf device.

Identity in Frequency (Claim 3).—This is also present in the defendants' apparatus; the sound waves are produced by the oscillator in the same way as is done by Fessenden.

The characteristics set forth in claim 4 are also present, as that claim is a summary of the first three claims.

Claim 5 sets forth the feature of sending out a sound for a predetermined period. This is also present in the defendants' apparatus; the sound is made by an oscillator in the same way as in the plaintiff's patent.

Claim 21 sets forth the method of measuring distance by varying the current in an electro-magnetic mechanism, etc. This is also present in the defendants' apparatus. The oscillator is an electro-magnetic mechanism, similar to that of the plaintiff.

Let a decree be entered for the plaintiff for an injunction.