**In re BOLONGARO.**

**Patent Appeal No. 3062.**

Court of Customs and Patent Appeals.
Feb. 6, 1933.

Hans v. Briesen, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant claims to have invented certain new and useful improvements and methods of producing printed publications from manuscripts. His method is rather fully set out in his rejected claims 8 and 9; claim 8 being here given as typical of both:

"8. Method of producing a printed publication from manuscripts, which comprises counting the letter spaces of a multiplicity of full lines contained on a plurality of pages of the printed publication, dividing the sum of said letter spaces by the number of lines counted to establish an arbitrary space factor per line, then separately and successively counting the letter spaces of each paragraph contained in the manuscripts, including a standard allowance at the beginning of the first line of each paragraph, reducing these latter spaces paragraph for paragraph to hypothetical lines of printed matter by applying the aforesaid factor, allocating space in the pages to be printed in accordance with the number of hypothetical lines thus ascertained and with a predetermined arrangement of the printed matter on the printed pages, then setting the type of the printed publication in such manner as to start at a line allocated for the beginning of the manuscript, then continuing the type setting in conformity with the allocated arrangement, and producing printed copies of the printed publication from a printing instrumentality prepared in manner aforesaid."

The claims were rejected by the Examiner on the ground that they were directed to subject-matter not patentable by law. The Examiner was further of the opinion that, even if the claims referred to patentable subject-matter, "the refinements disclosed by applicant are only such as a good mathematician would supply without invention. They are comparable merely to superior workmanship in the mechanic arts."

The Board of Appeals affirmed the Examiner's decision in all respects, and the appellant appeals.

Appellant argues that, by means of his alleged invention, it is now possible for the publisher to ascertain with exactness, in advance, how much space a certain manuscript will occupy in his publication, and will thus be able to prepare printed matter sufficient to fill all available space, including illustrations, if any, much more correctly than this has heretofore been possible. He argues that the method commonly used by printers and publishers heretofore has been to compute the space necessary by a count of words in a manuscript; that this method is uncertain, and varies greatly according to the character of the printed matter used, whether it be a scientific publication or one in which the words used are shorter and occupy less space. It is admitted by appellant that it has been common practice for printers to use the word method, and it is also conceded in argument that for a very long time printers and typesetters have used a measurement known as an "em," by which the extent of printed matter may be measured. Of this latter fact we think the court may also take judicial notice, the practice being one that is known generally. The measurement "em," used in such cases, is the space ordinarily occupied by the letter "m" in type.

The appellant further explains his method by stating that, after the count of letters in a number of lines has disclosed what should be the proper number of uni-spaces in a certain line of type of a certain kind, the publisher can then, by means of a rule prepared for that purpose, rapidly ascertain the number of uni-spaces in each line of typewritten matter in the manuscript, and by means of an adding machine can add these, divide by the number of uni-spaces in one line of his publication, and at once ascertain

how much space the typewritten manuscript will occupy. The appellant, in his practical application, it will be observed, utilizes various well-known devices to assist him in his work of computation.

The law provides, section 4886, Revised Statutes (35 USCA § 31): "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof," may obtain a patent therefor.

The query is, Has the appellant invented or discovered any such art, machine, manufacture, or composition of matter? If so, it must be included in the terms "new and useful art" or "improvements thereof."

What is or is not patentable must be determined in all cases by the particular subject-matter involved. An analysis of the method used by the appellant will be useful in determining whether he has invented some new and useful art or improvement thereof.

In the first place, the appellant, in operating his method, mechanically counts the number of letters in a certain number of lines of printed matter and then ascertains the average number of letters, including spaces and punctuation marks, in each line, and thus he determines the first factor in the operation of his method, namely, what he calls his unispaces. There is certainly nothing novel or inventive in this method, but simply a mathematical calculation.

He then repeats this process with several lines of a typewritten manuscript, and again computes an average of letter spaces, and this is his second step.

Thereupon he measures each line of the manuscript by a rule, upon which he seeks no patent, and, after having measured the entire manuscript, line by line, he divides this sum by the factor arrived at in the first step, and has his result. This result is doubtless more accurate than the methods which have heretofore been used by printers and publishers to accomplish similar results, but it is not a new method and, to our mind, is not inventive. It more nearly approaches that line of cases in which the subject-matter has been held not patentable, and which has been referred to as including "a method of transacting business, a form of contract, a mode of procedure, a rule of conduct, a principle or idea, or a permissive function, predicated upon a thing involving no structural law."

No case has been found exactly in point. However, the following authorities refer to instances wherein subject-matters, somewhat akin to that in issue here, were involved: Hotel Security Checking Co. v. Lorraine Co. (C. C. A.) 160 F. 467, 24 L. R. A. (N. S.) 665; Library Bureau v. Macey Co. (C. C. A.) 148 F. 380; Hocke v. New York Central & H. R. R. Co. (C. C. A.) 122 F. 467; Berry v. Wynkoop, etc. (C. C. A.) 84 F. 646; United States Credit System Co. v. American Credit Indemnity Co. (C. C. A.) 59 F. 139; Guthrie v. Curlett (C. C. A.) 10 F.(2d) 725.

The appellant calls attention to Submarine Signal Corporation v. General Radio Co. (D. C.) 14 F.(2d) 178, and In re Sheffield, 53 App. D. C. 109, 288 F. 463. In the first case cited, the inventor had disclosed and claimed a method of measuring distance by means of electrical signals sent out on shipboard by an operator, and the method of detecting, by receivers, the return of the echo; and, by a computation of the time that elapsed between the sending of the signal and the receipt of the echo, the depth of water at the operator's station could be ascertained. The court concluded in that case that the inventor's method involved a new function which method was not set forth in the prior art. Assuming, without discussing, the correctness of this conclusion, we hold that this case is not applicable here. It is not contended, as was shown to be the fact in the case cited, that the appellant's disclosure involves a few function, but simply that he has improved processes which have been known and practiced for many years in performing the same function.

In the latter of these cases, the inventor, by means of various kinds of type, indicated in printed matter the syntactic structure of sentences, presumably as an aid in the study of grammar. This was held to be patentable subject-matter. This case can hardly be said to be applicable to the case at bar here, because, in our opinion, the appellant's application does not disclose patentable subject-matter.

The decision of the Board of Appeals is affirmed.

Affirmed.