**Application of HERITAGE.**

**Patent Appeal No. 5018.**

Court of Customs and Patent Appeals.
June 22, 1945.

W. Bartlett Jones, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1, 2, 4, 5, 13, 15, 19, 20, 21, and 25) in appellant's application for a patent for an alleged invention relating to a method of producing porous coated fiber boards.

Claims 1, 4, 13, and 15 are illustrative of the appealed claims. They read:

"1. The method of producing a porous coated fiber board by coating a porous fiber board having fibers with undesired color qualities with a coating composition capable of producing an opaque coating on the fibers and capable of filling voids between fibers, which comprises coating a series of specimens of the board with the coating agent at known amounts per unit area in a progressive series including at one end of the series incompletely coated fibers and at the other end completely

coated fibers and completely filled voids, testing the coated series to find the critical usage between (1) incompletely coated fibers evidenced by appearance of color of the uncoated fiber at the coated surface of the specimens and (2) completely coated fibers evidenced by lack of visible color of the uncoated fibers, determining a noise reduction coefficient effected by the coated specimens of the series whereby it is found that there is a range of usage wherein there is a rapid variation in sound reduction coefficient between two substantially constant and critical values of sound reduction coefficient in the series, one constant value being for specimens with the fibers all coated and the voids filled, and the other constant value being for specimens wherein surface voids are present and the fibers may be uncoated or incompletely coated, or completely coated, selecting those usages which are within said variable range of sound reduction coefficients and above the first mentioned critical usage for color change as usages which may be employed to produce a coated board having surface voids for sound reduction and a color free from effect by appearance of exposed fiber, and applying the coating composition to said board at a usage within the range selected."

"4. The method of coating a porous sound reducing fiber board having a surface with pores which comprises applying an aqueous coating composition to the board while wet with water which composition is capable upon drying of coating the fibers and also capable of sealing the pores of the surface in a relatively high usage and of leaving unsealed pores in a relatively low usage, the quantity of composition applied being at least sufficient completely to coat the dry fibers while leaving the pores of the dry board substantially unsealed, and drying the wet board and the coating."

"13. The method of making a coated porous-surfaced fiber board which comprises applying a coating composition to a fiber mat, which composition is capable of forming an adherent solid coat upon the fibers and also capable of sealing the pores of the surface in a relatively high usage and of leaving unsealed pores in a relatively low usage, the quantity of composition applied being but slightly in excess of the amount which is just sufficient to coat the fibers completely whereby approximately the porosity of the uncoated board is retained for exhibiting substantially the same

sound reduction coefficient as the uncoated board."

"15. A dry surface-coated fiber board having interfelted fibers and inter-fiber voids characterized by the appearance of pores at the surface, each of the fibers of which the forms are visible at the surface having a continuous coat thereon, which coat is integral with like coats on other fibers at fiber-contacts and fiber crossings, the usage of coating material being at least not below the amount which is critical between an amount which incompletely coats the said fibers and an amount which completely coats the said fibers, the critical point being where the porosity begins to decrease while the said fibers are completely coated."

The references are:

Carmichael, 395,951, January 8, 1889;
Cutler et al., 1,779,532, October 28, 1930;
Ulrich, 1,818,874, August 11, 1931;
Novak, 2,104,052, January 4, 1938.

Appellant's alleged invention relates to the manufacture of coated porous-surfaced fiber boards for decorative and industrial uses, and has for its principal object the application of a coloring or protective coating on such boards, without materially impairing their porosity or acoustic properties. The desired result is obtained by coating only the outer fibers and leaving the pores between the fibers open throughout the board. In applying the coating, the board is first wetted, so that its pores are substantially filled with water, and the coating material is then applied in the form of an aqueous composition which lies on the surface of the board. The board is then dried, removing both the water used in the original wetting and the water in the coating composition, with the result that only the surface fibers are coated. The coating material is used in such quantity that it covers the surface fibers of the board, but does not fill the pores.

It is stated in appellant's application that the noise reduction coefficient of porous board is not affected by the application of coating material to the surface fibers unless the coating material is applied in such an amount that it fills or partially fills the pores; that the noise reducing coefficient becomes progressively lower, as more material is added, until the pores are entirely filled, after which the coefficient remains substantially constant, regardless of the amount of coating material applied;

that the amount of coating material considered most desirable is that which produces the most complete surface coating without closing or partially closing the pores; and that a lesser amount will not prevent a change in color of the coated surface on exposure to light and air, but a greater amount will close or partially close the pores, resulting in a decreased noise reduction coefficient.

In order to determine the proper amount of any particular material to be used in coating a particular board, samples of the board are coated with progressively increasing amounts of material, beginning with zero and ending with a complete covering of the surface. The samples are then tested for "noise reduction coefficient," that is, the percentages of sound absorbed. The group at the lower end of the coating range has substantially a constant *high* coefficient; whereas, the intermediate group varies from a *high* to a *low* coefficient, and the group at the upper end of the coating range has substantially a *low* coefficient. The intermediate group, therefore, represents the range from the point at which the coating begins to fill the pores to the point at which it completely fills them. Accordingly, for a complete coating with maximum sound absorption, the sample having the least amount of coating of those in the intermediate range should be selected.

The patents to Carmichael, Cutler et al., and Ulrich are generally similar and disclose the treatment of fiber board by the application of a material which is dissolved in an organic solvent and which impregnates the individual fibers throughout the board, but does not fill the pores, whereas in appellant's process, as disclosed in his application, the coating material does not penetrate to the inner fibers.

The patent to Novak relates to the treatment of "paper, fiber board or the like." In this patent, a web of the material to be treated is wetted and passed through a bath of an aqueous solution of a permeating material.

Claims 1 and 2 are drawn to an alleged method which comprises coating samples with varying amounts of material, testing them for sound reduction coefficient, selecting a specimen within the range of varying coefficients, which range lies between the two ranges of substantially constant coefficients, and using the amount of material applied to the selected specimen as the criterion in future coating. Those

claims have been rejected by the tribunals of the Patent Office as not defining any art within the scope of the protection provided by the patent statutes, and, therefore, not defining patentable subject matter.

It is, of course, common knowledge, as indicated in the decision of the Board of Appeals, that a porous board has better sound absorbing properties than a nonporous board. Accordingly, in coating a board which is to be used for absorbing sound it would be understood that the board should remain as porous as possible, and that the coating material should not be applied in such quantities as to destroy or materially lessen the capacity of the board for absorbing sound. Obviously, therefore, the amount of coating material to be used would be determined by applying varying amounts to specimens and testing such specimens for their noise reduction coefficients. The specimen selected, after such testing, should be the one which had the greatest amount of coating and which substantially retained its original coefficient. In making such tests it would, of course, be found that the lightly coated samples had a substantially constant coefficient and that, as the amount of coating material was increased, a point would be reached at which the coefficient became less. This would naturally be the point selected, if it were desired to give as much protection to the board as possible without lowering its acoustic value.

The feature of appealed claims 1 and 2 which is relied on for patentable novelty is the mental process of making a selection of the amount of coating material to be used in accordance with a predetermined system. Such purely mental acts are not proper subject matter for protection under the patent statutes, as held by the tribunals of the Patent Office. See In re Cooper et al., 134 F.2d 630, 30 C.C.P.A., Patents, 946; Don Lee, Inc., v. Walker, 9 Cir., 61 F.2d 58; In re Bolongaro, 62 F.2d 1059, 20 C.C.P.A., Patents, 845.

In the case of In re Cooper et al., supra, this court, in holding that the determination of the proportions of elements to be used in an alloy in accordance with a specified formula did not involve patentable subject matter, said [134 F.2d 632]:

"The appellants have set out a formula for determination of the carbon content of steel corresponding to given quantities of the alloying elements. This, however, is not patentable per se as it does not fall

within any of the statutory classes of invention as set out in section 4886, R.S., 35 U.S.C.A. § 31. Patentability of the claims may not rest solely on the fact that the carbon contents specified therein are calculated from the formula."

Owing to the fact that claims 1 and 2 are essentially directed to a purely mental process of making a selection of the amount of coating material to be used in coating a porous fiber board in accordance with a predetermined system they do not define patentable subject matter.

■ Claims 4, 5, 13, 15, 19, 20, 21 and 25 were rejected by the Primary Examiner on the patents to Carmichael Cutler et al., Ulrich, or Novak, and claims 4, 5, 13, and 25 were also rejected by him as being functional, "since," he stated, "they do not set forth the amount of composition used but state that sufficient is employed to obtain the desired result of covering the fibers but leaving the pores open."

The Board of Appeals concurred in the examiner's rejection of claims 4, 5, 13, and 25 as being functional, and called attention to the fact that the examiner had rejected all of the claims, except those numbered 1 and 2, as being unpatentable over the references of record. With reference to the Novak patent, the board stated that "The degree to which" the apparatus disclosed by the patentee "coats or approaches saturation is not patentable." The board further stated that the amount of coating called for by claims 4, 5, 13, 15, 19, 20, and 21 was merely a matter of degree and did not involve invention.

In a decision in response to a request by counsel for appellant for reconsideration of its original decision, the board stated that "the process claims are in effect for a testing scheme to arrive at the proper concentration of coating by variably coating several samples and testing the same. The making of samples and testing the same is conventional practice."

■ Claims 15, 19, 20, and 21 are product claims drawn to a "dry surface-coated fiber board" in which each of the surface fibers is completely coated, but the pores between them remain open.

In the Ulrich patent it is stated that the asphalt or like material which is applied to the porous board will "encase and impregnate the individual fibers of the mass" but will not "fill the interstices or air pockets,"

and that the process of the patent "leaves the interstices or air voids in the boards substantially unimpaired."

The contention of counsel for appellant that the term "surface-coated," as used in claims 15, 19, 20, and 21, definitely excludes an impregnated body is, in our opinion, untenable.

Those claims describe the surface of the board only and are silent as to what is below the surface. It is immaterial, therefore, so far as they are concerned, whether or not the fibers below the surface are impregnated. The exact degree of penetration of the board by the liquid is, as held by the Board of Appeals, a matter of degree only.

In the case of Continental Fibre Co. v. Formica Insulation Co., 6 Cir., 287 F. 455, 456, the Circuit Court of Appeals made the following observation which we think is applicable here:

"* * * We are not able to think that the difference between a surface permeation and saturation and a saturation which goes to the center of the sheet is in itself anything more than a difference in degree * * *."

There is nothing of record in the instant case which would support a holding that there is any critical difference between coating the surface fibers only and coating all the fibers.

We are of opinion that claims 15, 19, 20, and 21 are unpatentable in view of the disclosure in the Ulrich patent.

Claims 13 and 25, which are directed to a process, are not limited to the application of a coating material to the surface only.

As hereinbefore noted, in the Ulrich process all the surface fibers are completely coated, but, as stated by the patentee, the porosity of the board is not materially impaired.

We are of opinion that the rather indefinite requirements of claims 13 and 25 as to the amount of coating material are insufficient to define patentable subject matter in view of the process disclosed in the Ulrich patent. As pointed out by the Patent Office tribunals, the limitation as to the amount of coating material in those claims is merely functional and, therefore, cannot be relied upon to lend patentability to the claims. General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

Claim 25 includes the steps of determining the minimum usages of coating material necessary to produce certain results.

As hereinbefore stated, patentability cannot be predicated on mental processes as steps in a method claim.

Method claims 4 and 5, together with claims 13, 15, 19, 20, 21, and 25, were rejected by the examiner "as being unpatentable over Carmichael, Cutler, Ulrich or Novak," the examiner stating that, although the first three patents "fail to disclose that the board being treated is wet with water," Novak "shows that it is desirable to maintain a web in wet condition if it is to receive an aqueous bath."

It is evident, we think, from the quoted excerpt from the examiner's decision that it was the intention of the examiner to reject claims 4 and 5 on the patents to Carmichael, Cutler et al., or Ulrich in view of the disclosure in the patent to Novak. The Board of Appeals did not reverse that ground of rejection, but entered a general affirmance of the examiner's decision.

An affirmance by the board has the legal effect of affirming all grounds of rejection applied by the examiner, "and not expressly reversed by the board." In re Wagenhorst, 64 F.2d 780, 782, 20 C.C.P.A., Patents, 991; In re Wahl, 132 F.2d 323, 30 C.C.P.A., Patents, 719.

The examiner also stated that, although Carmichael, Cutler et al., and Ulrich used organic solvents in order to apply the coating material, rather than an aqueous dispersion as called for by claims 4 and 5, that difference was not a patentable one as the liquid, whether water or an organic material, is removed by the final step of drying the board.

We are in accord with that holding, as it is obvious that the specific solvent used is merely a matter of choice. Furthermore, claims 4 and 5 distinguish over Carmichael, Cutler et al., and Ulrich only by stating that the board is wet when the coating material is applied. That feature is clearly disclosed in the patent to Novak, and we are of opinion that if it were desired to employ an aqueous dispersion instead of an organic solvent, it would be obvious to wet the board prior to the application of the coating material, as taught by Novak. Claims 4 and 5 do not state that the coating material is confined to the surface of the board. Moreover, as hereinbefore stated, the specific depth of penetration of a coating material is merely a matter of degree. We hold, therefore, that the rejection of claims 4 and 5 on the patents to Carmichael, Cutler et al., or Ulrich in view of the patent to Novak was proper.

It may be, as contended by counsel for appellant, that the wetting of the board in the Novak process does not completely prevent the coating material from penetrating the pores of the board. However, claims 4 and 5 do not state that the board is wetted to such an extent that all its pores are filled with water, or that the coating material is applied in such a manner that it will be excluded from the pores by the water. Accordingly, the wetting broadly defined in those claims presents no distinction over the wetting disclosed in the Novak patent.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.