88 C.C.P.A. (Patents)

**In re ABRAMS.**
**Patent Appeals No. 5723.**

United States Court of Customs and
Patent Appeals.

March 6, 1951.

Rehearing Denied April 10, 1951.

Sidney A. Johnson, Dallas, Tex. (Richard K. Stevens, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

By this appeal appellant seeks review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner, hereinafter referred to as the examiner, of four of the claims in appellant's application for patent entitled "for Petroleum Prospecting Method."

As passed on by the examiner the application contained eight claims numbered 1 to 8, inclusive, all of which he rejected. Appellant appealed to the Board of Appeals and before that tribunal withdrew four of the claims, the appeal as to which was dismissed. Those remaining and which are embraced in the appeal to us are Nos. 1, 2, 4, and 8.

In the brief of the Solicitor for the Patent Office it is said: "The rejection of the claims in this case is based on the ground that the claims fail to define a process involving subject matter which properly comes within the terms of Section 4886, R.S. [35 U.S.C.A. § 31] The specific objection is that the steps in the claims which constitute the heart of the invention are purely mental in character."

No prior art was cited in connection with the rejection of the claims.

The board quoted claim 4 as illustrative. There is no contention that any of the other appealed claims contain limitations which patentably differentiate them from that claim, and we here reproduce it: "4. A method of prospecting for petroliferous deposits comprising, (1) sinking a number of boreholes in an area under investigation, (2) sealing off each of said boreholes from the atmosphere at any desirable depth below the level of atmospheric breathing in such manner that a known area of the inner surface thereof is made available for diffusion of subsurface gases into said borehole, (3) reducing the pressure in said borehole to a value substantially below atmospheric, (4) measuring the rate of pressure rise per unit area of surface available for diffusion of subsurface gases into said borehole for a number of timed intervals, (5) determining the rate of pressure rise in said borehole at a standard reference pressure from the values obtained in step (4), and (6) comparing the rates determined in step 5 for the different boreholes to detect anomalies which are indicative of the presence of petroliferous deposits."

We take from the brief for appellant the following description of the claimed method, the reference to pages of the record being deleted:

"In general the invention here involved is a new and useful method of prospecting for the presence of petroliferous deposits.
"Natural gas or petroleum oil deposits give rise to certain gaseous emanations in

and about the area of their location. Anomalous variations in the amounts of these gaseous materials may be utilized to detect the presence of the aforesaid deposits.

"By applicant's method, the presence of these anomalous variations is more reliably and readily determined by measuring variations in the flow rates of the gaseous emanations at pressures substantially below atmospheric.

"More specifically, a number of boreholes are sunk in the area under investigation at a distance below the level at which the movement of air and gases within the soil, i. e., soil breathing, would impair the accuracy of the results desired. Each borehole is then sealed off so that a collecting chamber is formed into which the subsurface gases may diffuse. A vacuum pump is connected to the borehole and the pressure in the chamber is reduced to a value substantially below that of atmospheric. The pressure is then allowed to rise and, by means of a suitable pressure measuring device, readings are taken at regular time intervals. The increase in pressure in a borehole for any time interval is an indication of the flow rate of the gaseous emanations therein at the average pressure prevailing during that time interval.

"In order to ascertain the value or extent of the various physical and positive steps enumerated above, obviously some use must be made of the various flow rates obtained. In order to evaluate the various flow rates determined from the field data they must be compared at some uniform or standard reference pressure. This may be any value and usually some value within the range over which the pressure changed in a majority or all of the boreholes would be selected as the basis of comparison as a matter of convenience.

"If the boreholes are of a uniform dimension, the flow rates at the reference pressure are then merely compared to detect anomalies which are indicative of the presence of petroliferous deposits. This comparison permits a determination of the extent or limits of the physical steps taken.

"In case the boreholes vary as to dimension, the flow rate data is further converted to a standard surface area value and the flow rates compared as stated above."

Counsel for appellant state in the brief on his behalf that a need exists "for a rule of guidance in so-called 'mental step' cases," asserting that much confusion exists growing out of decisions which have been rendered. In connection with this, the brief states: "While appellant has found it possible, after no little effort, to draw some distinctions and conclusions from the various decisions involving this type of case, no decision has been found which specifically sets forth any logical rule to follow."

Going further, the brief sets forth as applicable to cases where the claims contain certain so-called mental steps, three suggested "rules of law" reading:

"1. If all the steps of a method claim are purely mental in character, the subject matter thereof is not patentable within the meaning of the patent statutes.

"2. If a method claim embodies both positive and physical steps as well as so-called mental steps, yet the alleged novelty or advance over the art resides in one or more of the so-called mental steps, then the claim is considered unpatentable for the same reason that it would be if all the steps were purely mental in character.

"3. If a method claim embodies both positive and physical steps as well as so-called mental steps, yet the novelty or advance over the art resides in one or more of the positive and physical steps and the so-called mental step or steps are incidental parts of the process which are essential to define, qualify or limit its scope, then the claim is patentable and not subject to the objection contained in 1 and 2 above."

The brief states that the proposed rules were formulated on behalf of appellant from a review of many decisions, and it is said: "Appellant strongly feels that this court should adopt the three rules promulgated * * *, or some modification thereof, in order that some rule of reason which is readily understandable to all can be applied to these 'mental' step cases."

It is argued that appellant's claims come within the third rule.

Apparently, the proposed rules were suggested to the tribunals of the Patent Office—at least to the examiner, who mentions them in his reply to the brief for appellant filed with the appeal to the board —but neither the examiner nor the board expressed either approval or disapproval of them.

From such examination of the decisions as we have been able to make, the suggested rules appear to accord with them, but it is unnecessary for us arbitrarily to go beyond the requirements of the instant case. For the purpose of its decision, it is sufficient to determine whether or not the claims fall within proposition 3 upon which appellant relies. According to that rule, it must appear that there has been (a) an advance over prior art and that (b) such advance or novelty resides in the physical steps set forth in the claims.

Inasmuch as no prior art was cited below, it would appear that an advance in the art is conceded so far as the tribunals of the Patent Office are concerned. At any rate, in the absence of an adverse finding as to that, no question about it is before us for consideration, and the sole question is whether the novelty thus assumed is the result of a physical act or is simply a mental concept.

In the statement of the examiner following the appeal to the board it was said: "All claims have been rejected as improper under the statutes in setting forth a process that predominately involves merely a mental process in obtaining the result. This mental process is indicated by such terms in the claims as 'calculating' applied for instance to mathematically making certain computations from figures taken down from pressure observation, 'comparing' applied to mere mental comparison of figures on a sheet 'converting' as related to mathematically calculating the flow data or pressure rise with respect to a standard reference pressure, 'determining' applied, for instance, to the reading of the pressure rise figures; 'correcting' involving mere mathematical calculations.

"The total effect of these expressions and steps in the claims is convincing that the nature of the invention is like that found in such decisions as Ex parte Toth, 63 U.S. P.Q. 131 (correcting and determining); In re Heritage, 150 F.2d 554, 32 C.C.P.A., Patents, 1170 and Halliburton Oil Well Cementing Co. v. Walker, 9 Cir., 146 F.2d 817, involving therein such purely mental terms as 'determining', 'registering', 'counting', 'observing', 'measuring', 'comparing', 'recording', and 'computing', in which the processes claimed were found to be non-statutory."

The decision in the Toth case, supra, was by the Board of Appeals of the Patent Office and that in the Halliburton case, supra, by the United States Circuit Court of Appeals, Ninth Circuit, 146 F.2d 817.

Not all the terms quoted by the examiner are found in claim 4, supra, but most of them appear in the four appealed claims taken together.

In approving the rejection of the examiner the board commented upon the steps defined in the claims as follows: "The claims have been refused as improper under the statutes in including mental steps in the process. Step 5 of the quoted claim is essentially a step of transforming pressure rise figures to standard values. Step 6 is a step of comparing data obtained in a plurality of locations in order to derive some information as to the possibility of existence of petroleum deposits. The original specification indicates that steps 1 and 2 are old for the purpose of the present application. Steps 3 and 4, which taken together produce data in the form of figures, are said to describe appellant's differences in procedure over the acknowledged prior art. However, these steps, that is those defined as 3 and 4 in the quoted claim, are without significance in the absence of the calculation steps under 5."

In the brief for appellant it is said, references to pages of the record being deleted: "Claim 4 is illustrative of the claims and was so considered to be by the Board of Appeals. It is to be emphasized that of the six steps contained in this claim only one, step 6, is open to the charge, and this is arguable, of being a so-called 'mental step.' The other five steps are: '(1) sinking a number of boreholes—', '(2) sealing off each of said boreholes—', '(3)

reducing the pressure in said borehole to a value substantially below atmospheric', '(4) measuring the rate of pressure rise per unit area—', and '(5) determining the rate of pressure rise in said borehole—'."

It is urged on behalf of appellant that the decisions cited by the examiner and rejected by the board do not support their conclusion and, in effect, that the case at bar is governed by the decisions in the cases of Ex parte Lewis, 48 U.S.P.Q. 141; Ellis v. Coe, Com'r of Patents, 49 U.S.P.Q. 232 [1]; and Ex parte Baymiller, 68 U.S.P.Q. 403. The Lewis and Baymiller decisions were by the Board of Appeals of the Patent Office and that in the Ellis v. Coe case by Barksdale, J., United States District Court of the District of Columbia.

In truth, the question of whether a step in a process is mental or physical seems to us to be one of fact rather than one of law and so should not be difficult of determination, but opinions sometimes differ even as to facts. We have examined the cases cited in the respective briefs, together with some not so cited, in our study of the controversy.

Citation of authority in support of the principle that claims to mental concepts which constitute the very substance of an alleged invention are not patentable is unnecessary. It is self-evident that thought is not patentable.

In respect of the cases cited by appellant we feel constrained to agree with the holding of the examiner to the effect that they do not support appellant's position.

In the Lewis case, supra, the claims were rejected by the Primary Examiner solely upon prior art. The Board of Appeals reversed his decision, but nowhere in the board's decision is there any reference to a "mental" step. The disclosure there related to a method of determining the probable productivity of oil sands from analyses of characteristics of core samples. It is true that the process involved making certain calculations based upon the oil and water content of the core samples taken

from the sand, but patentability was not dependent upon the calculations.

It is somewhat difficult to compare the process involved in the Ellis v. Coe case, supra, with that of appellant because of the differences in subject matter. The patent which Ellis sought and which the District Court authorized, in an action under Sec. 4915, R.S., 35 U.S.C.A. § 63, was for a method and apparatus for determining a characteristic of living animal tissue and so far as we can determine no purely mental step is shown to have been recited in the claim.

In the Baymiller case, supra, the board at first affirmed the examiner's rejection of the particular claim, allowance of which is relied upon by appellant here, not because a purely "mental" step was claimed, but upon prior art. Upon reconsideration, however, the board concluded that it was not disclosed in the reference and allowed the claim. There does not seem to us to be any discussion in that decision which has any pertinency here. The claim related to a process of manufacturing golf clubs.

It is contended on behalf of appellant that the cases relied upon by the examiner are cases in which the claims fall within the classification defined in either 1 or 2 of his suggested "rules of law," supra.

In the Toth case, supra, there were involved claims relating to a method for determining the maximum productivity of a pumped oil well. In the claims references were made to "indicated pressure of gas in the pump tubing," determining the well pressure, etc. The first ground of rejection approved by the Board of Appeals was based on lack of invention over prior art, but it added the additional ground that "correcting said indicated pressure" and "determining the well pressure" were "purely mental" and do not come within the definition of an "art" as given by different authorities [2], and so do not constitute steps of a patentable process.

---

1. No opinion for publication.

2. In Cochrane v. Deener, 94 U.S. 780, 24 L.Ed. 139, the Supreme Court enunciated what the brief of the Solicitor for

the Patent Office states is the generally accepted definition of an "art" as used in the patent law, as follows: "A process is a mode of treatment of certain

The Halliburton v. Walker case, supra, was an infringement proceeding in which the validity of two patents, relating to locating obstructions in oil wells, was involved. A claim stated by the court to be typical of all the claims in the patent (No. 2,209,944) which was held invalid read as follows: "2. The method of determining the unknown location of an obstruction in a well having a string of tubing therein, which consists in creating an acoustical impulse in the annular space between the tubing and the well casing to produce echoes from portions of the tubing string distinguishable from each other and from the echo from the unknown obstruction, observing the lapse of time between the arrival at a predetermined point of the echoes from successive portions of the tubing string to thereby determine the velocity of the pressure wave through the particular well under measurement, and measuring the lapse of time between the creation of the pressure impulse and the arrival at said predetermined point of the echo from the unknown obstruction."

The court having stated that the steps of the method claimed were described in the claims taken together by the descriptive words "determining," "registering," "counting," "observing," "measuring," "comparing," "recording," and "computing," declared:

"In substance, Walker's method here claimed consists in setting down three knowns in a simple equation and from them determining or computing an unknown. The three knowns are: (a) the distance from the well head to the tubing catcher (for example) ; (b) the length of time it takes an echo to return from that obstruction; and (c) the length of time it takes an echo to return from the fluid surface. From these three knowns can then be determined the distance of the fluid surface from the well head.

"We think these mental steps, even if novel, are not patentable. Cf. Don Lee, Inc. v. Walker, 9 Cir., 61 F.2d 58. A patent may be obtained only upon an invention of a 'new and useful art, machine, manufacture, or composition of matter'. 35 U.S.C.A. § 31."

In the Heritage case, supra, two method claims relating to the manufacture of coated surfaces of fiber boards were involved. The claims comprised "coating samples with varying amounts of material, testing them for sound reduction coefficient, selecting a specimen within the range of varying coefficients * * * and using the amount of material applied to the selected specimen as the criterion in future coating." [150 F.2d 560.]

Speaking through the late Judge Hatfield we said: "The feature of appealed claims 1 and 2 which is relied on for patentable novelty is the mental process of making a selection of the amount of coating material to be used in accordance with a predetermined system. Such purely mental acts are not proper subject matter for protection under the patent statutes, as held by the tribunals of the Patent Office. See In re Cooper, 134 F.2d 630, 30 C.C.P.A., Patents, 946; Don Lee, Inc. v. Walker, 9 Cir., 61 F.2d 58; In re Bolongaro, 62 F.2d 1059, 20 C.C.P.A., Patents, 845." [150 F.2d 556.]

We deem it proper to resort to appellant's specification as an aid in interpreting the steps of the claims.

First, it may be said that there has been no challenge of the board's statement that the original specification indicates that steps 1 and 2 are old for the purposes of the present application. They seem to have been described in another application of which this is a continuation-in-part.

The following from the specification bears upon the other steps: " * * * A

materials to produce a given result. It is an act or series of acts, performed upon the subject-matter to be transformed and reduced to a different state

or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art."

170

suitable pressure measuring device and vacuum pump are placed in communication with the hole and the pressure in the sealed off section of the hole is reduced to a value substantially below atmospheric. The pressure is then allowed to rise and pressure readings are taken at regular time intervals. The increase in pressure in a borehole for any time interval is, of course, an indication of the flow rate in the hole. Therefore, where the holes are of uniform dimensions in any particular survey, I do not need to calculate the actual flow rates from the pressure data obtained, which may be done, however, by use of the gas laws. I prefer rather to plot the rise in pressure measured for a number of time intervals against the average pressures for those time intervals, and to extrapolate the curve thus obtained to derive the rate of pressure rise in each hole at a standard reference pressure, such as 760 mms., all as fully explained and illustrated in detail hereinafter. On the other hand, however, where the test holes in a survey are of different dimensions, for example, where they have been drilled to different depths, the pressure data must be corrected before plotting, so that the factor of difference in volume in the various holes is taken into account. This may be done by use of calculations involving the gas laws in the manner well known to the art. In the same way the pressure data may be converted to flow rate data at the prevailing average pressure prior to plotting if desirable."

When the steps of the claims are considered in the light of the explanation of their character so given, it seems to us that they are eliminated from the applicability of appellant's proposed rule 3, and fall within No. 2.

The Halliburton v. Walker case, supra seems to us to be sound in its reasoning and directly applicable here.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.