57 CCPA

**Application of Calvin M. HAMMACK.**

**Patent Appeal No. 8284.**

United States Court of Customs
and Patent Appeals.

July 2, 1970.

Rehearing Denied Sept. 10, 1970.

See also Cust. & Pat.App., 427 F.2d 1378.

Victor R. Beckman, San Francisco, Cal., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges; and FORD, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 4–55 and 58–70, all the remaining claims in appellant's application.[1] The appeal was heard, and is being decided, concurrently with Appeal No. 8278, which involves another application of appellant directed to related subject matter.[2]

The present application is directed to the determination of position and velocity of moving objects such as missiles and navigating vehicles.[3] These deter-

---

1. Serial No. 278,191, filed May 6, 1963, for "Doppler System For Detecting and Tracking Moving Objects, Determining the Characteristics of Their Motions and Similar Applications."

2. Serial No. 86,770, filed February 2, 1961.

3. Although the application is long and complex, the claims extremely numerous, and appellant charges that many of the alleged errors by the board are grounded on its "lack of understanding of the technical aspects" of the "invention" and the "associated art," appellant chose not to be represented at the oral hearing

minations require numerous measurements based on the well-known doppler effect, which may be broadly described as the phenomenon whereby relative movement between a source of emanations or reflections of a wave train (such as an electromagnetic wave, light wave or sound wave) and a receiver results in an effective change in the wave frequency proportional to the relative velocity between the source and receiver.

Appellant's disclosure includes a general description of a number of different systems. In one system, the position of a reflective missile is determined by using three stations in known locations, each station being capable of transmitting continuous radio frequency waves and receiving such waves when reflected back from the target missile. Each station employs a different frequency and measures the net change of phase (indicative of doppler frequency change) of the received signal with respect to the transmitted signal which occurs in a finite time interval. This measured change of phase is proportional to the corresponding change of range of the missile from the station. From the known data regarding the locations of the stations, the measured data from the plurality of stations, and additional relationships or restraints assumed as to the characteristics of the target motion,[4] appellant establishes equations which he states may be solved through the use of a digital computer to determine the position and velocity of the target.

In an alternative to the aforementioned system using the same number of stations, appellant obtains, through measurements based on doppler effect, electrical signals which are representative of the radial velocity of the target relative to the various stations, and, if desired, additional signals representative of the first, second or higher mathematical time derivatives of such velocity.

Through use of these signals and additional information based on assumed restraints on the motion of the moving target, appellant establishes a sufficient number of equations to permit solution for target position and velocity.

Appellant's application also makes reference to a multiplicity of other modifications, some of which are described only in very general terms. Among these modifications is a system which uses three stationary transmitters in conjunction with a single stationary receiver that intercepts waves from the transmitters that are reflected from the moving target and a system for simultaneously determining the positions of a plurality of moving targets. Still other systems involve the use of a single transmitter and receiver with one or the other disposed in the target or both outside the target. It appears from the application that the latter arrangements require that specialized restraints be assumed as to the nature of the path of the target and that, in at least certain cases, the system is limited to determinations of position in a single plane.

Neither appellant nor the Patent Office tribunals have designated any claim or group of claims as truly representative of the total of sixty-five claims on appeal as to all issues raised. However, the issues which we find dispositive of the appeal will be sufficiently clear from consideration of the following claims:

23. A method of determining in three dimensions the present position and the positions of points along the path of a moving object comprising the following steps:

(1) Simultaneously performing three separate measurements, during each of a number of overlapping or contiguous intervals of time, changes in the magnitudes of geometrical properties of the geometrical configuration

---

where he or his representative would have been in a position to answer questions which could have been most helpful to the court.

4. The application suggests such restraints as considering the target's motion to be confined to a plane or to be in a known path such as a straight line or an ellipse.

formed by straight lines connecting each of a number of fixed points to the moving object, which geometrical properties may be the lengths of said straight lines, the sums of the lengths of two such lines, or the difference between the lengths of two such lines,

(2) Calculating the lengths of said lines between the moving object and each of said known points using only one set of the three simultaneous sets of measurements for each calculation, and computing the present position and positions along the path of the moving object corresponding to the one set of measured data to any desired computational accuracy, without regard to statistical compromises, which computing is based in part on the knowledge that the path of the moving object is continuous in space and not repetitive over the interval of the sequence of measurements,

(3) Computing the significant positions along the path of the moving object, by trilateration using the data derived separately from each of the three sets of data.

33. A method of determining the position of a moving object travelling in a ballistic trajectory comprising the following steps:

(1) Establishing on the Earth's surface at separate known positions a transmitter and a receiver of radio waves,

(2) Measuring repeatedly the change in the total distance from the said transmitter to the moving object to the said receiver by observations of the doppler phenomenon,

(3) Computing the position of the moving object from the data measured in Step (2).

37. A method of determining the position of a moving object at a number of places along its path comprising the following steps:

(1) Measuring simultaneously and repeatedly the algebraic sums of the changes of range from the moving object to a first reference point and the range from the moving object to each of two other reference points, all of which reference points are known and may be free,

(2) Determining by timing means the times of occurrence of the initiation and termination of each measurement,

(3) Computing the positions occupied by the moving object corresponding to the initiation and termination of the measurements.

49. A method of determining the positions and motions of moving objects and of the stations which the measuring system comprises, comprising the following steps:

Step (1) Performing doppler measurements relative to the motion of the moving objects and stations of the measuring system,

Step (2) Writing equations relating the measurements of Step (1) to the coordinates of the significant positions of the moving bodies and the stations of the system,

Step (3) Writing equations relating to each other the coordinates of the significant positions of the moving bodies and the stations of the system,

Step (4) Solving the equations derived in Steps (2) and (3) for the coordinates of the significant positions of the moving objects and the stations which the system comprises.

69. A method of determining in orthogonal space coordinates the position of a moving object relative to a plurality of reference points comprising the following acts:

(1) Transmitting waves along propagation paths, the lengths of which paths being subject to variations non-linearly dependent upon the motion of said moving object;

(2) Measuring, by detecting said waves, quantities lin-early [sic] related to said variations;

(3) Solving a set of simultaneous equations whose known parameters comprise the data determined in step (2) and whose unknown quantities comprise the orthogonal space coordinates of said moving object, said set comprising:

a. Equations relating said variations to said orthogonal space coordinates.

b. Equations expressing the positional variation of said moving object in terms of the dimensions of said orthogonal space coordinates.

70. A method of determining nonredundantly in one or more nonorthogonal coordinate dimensions the position of a moving object relative to one or more reference points by measuring quantities linearly related to increments in the unknown ranges from said reference points to the moving object.

The following references were relied upon by the examiner and the board:

Kohler 2,911,641 Nov. 3, 1959

Grimm et al. 3,155,937 Nov. 3, 1964 (Grimm)

Kohler relates to a system responsive to doppler effect for determining changes in distance between a single transmitter-receiver station and a moving target. The station includes apparatus responsive jointly to transmitted electromagnetic waves and to the reflection of those waves from the target to produce electrical signals which operate an electronic counter. The counter indicates the amount of change in the radial distance from the receiver to the target.

Grimm discloses a tracking system employing a "vehicle and a group of receivers of precisely known location and capable of accepting and passing to a computer the basic frequency of the projector plus or minus the doppler frequency shift of this frequency," which system is employed to determine and display position and velocity information. The exemplary system is said to have particular advantages as an underwater navigation system. It employs a trans-mitter on the vehicle and four hydrophone receivers at different stations. Electrical circuit means treat electrical signals derived from doppler effect measurements at the stations to provide signals which are indicative of functions of the responses at each station and are employed along with the known positions of the stations to establish four equations which it is said may be solved simultaneously by a "simultaneous equation solver" or computer to determine position and velocity of the vehicle.

Three grounds of rejection are involved. One is a rejection of claim 69 only as unpatentable over the Grimm patent, stated to be under 35 U.S.C. § 103. Another rejection is on the ground that all the claims are drawn to nonstatutory subject matter, such rejection being based on 35 U.S.C. §§ 100 and 101. Additionally, all of the claims are rejected as indefinite for failure to comply with 35 U.S.C. § 112.

In affirming the rejection of claim 69 on Grimm, the board observed that it "found nowhere in appellant's responses that he denies that this claim is readable on the references [reference?]," but instead that appellant attacks the operability of the reference. Appellant does not contradict that observation before us. He does point out the reasons why he thinks that certain elements in Grimm's circuit will not operate to produce the particular functions of the doppler-effect signals that Grimm requires to establish the simultaneous equations which he solves to determine target position and velocity. On the other hand, the board points out that Grimm explains fully how the electrical signals are to be processed in the circuits he provides and regards the disclosure as sufficient to enable a person of ordinary skill in the art to provide conventional circuits to obtain the result required by the reference. Appellant's arguments, which are not supported by a factual showing, have been thoroughly considered but they do not convince us that the board erred in that conclusion. See In re Jacobs, 318 F.2d 743, 50 CCPA

1316; In re Spence, 261 F.2d 244, 46 CCPA 722. The rejection of claim 69 on Grimm is therefore affirmed.

The rejection of the claims on indefiniteness originated in the final rejection where the examiner stated:

Claims 4–70 are rejected as failing to distinctly claim the invention as required by 35 U.S.C. 112. * * *

The examiner then pointed out specific recitations in certain claims which he described as drawn to mental steps. He then further stated:

Both of the above discussed typical claims 19 and 64 are further indefinite in that they fail to distinctly claim the invention. Step 1 *for example* of claim 19 is vague. In claim 64, the exact nature of the program contemplated is not recited. In the new claims 58, 60, 67–69, the nature of the problem to be solved in the computer has not been clearly set forth. The claims are not only drawn to mental steps, they are vague and indefinite.

The final action concluded with the statement:

Claim 70 is further rejected as obviously failing to distinctly claim the invention as required by 35 U.S.C. 112 merely making the measurement described in lines 3–5 will not result in a determination of object position.

In his Answer, the examiner further commented:

As stated in the final rejection, the claims are not only drawn to mental steps [,] they are indefinite. The following limitations in the following claims fail to distinctly claim the invention as required by 35 U.S.C. 112. That statement was followed by a list of fifty of the sixty-five claims by number, each claim number being followed by identification of one or more of the steps recited therein. The examiner then made specific comments describing certain recitations (set out later herein) in claims 23, 33, 37, and 49 as either "indefinite," "meaningless," or "misdescriptive."

As to the present rejection, the board observed that the claims "stand further rejected as not in compliance with 35 U.S.C. 112 in that they are alleged to be indefinite." It further stated:

We have studied the various items noted by the Examiner and appellant's responses thereto but we are not persuaded of reversible error in the rejection of the instant claims for indefiniteness.

Although it seems to this Board that many of the criticisms expressed by the Examiner are of a semantic origin, and could well have been resolved prior to the instant appeal, since the intended meaning in the light of the specification is readily apparent[5]; however, since this has not been done, we are satisfied that the criticisms of the Examiner are sustainable.

We note particularly that in each of the appealed claims herein[6] the term

---

5. Appellant terms "incongruous" the board's reference to the "intended meaning in the light of the specification" being readily apparent. Taking the statement out of context, there might be merit to that characterization since it is apparent that the specification is entitled to reasonable consideration in ascertaining the meaning of the terminology of the claims. However, the disclosure cannot be relied upon during prosecution to impart unexpressed limitations into the claim or to impart unexpressed restrictions on intangible claim language. Taken in context of the board's express affirmation of the examiner's rejection, we think the board was merely concerned with appellant's insistence on presenting the claims in terminology which, in agreement with the examiner, it considered inadequate to make their meaning clear. Referring to the preceding statements in the same sentence of the board, it is apparent that indefiniteness in claims is necessarily "of a semantic origin" and is not rendered unobjectionable merely because it *could* have been corrected.

6. Actually, no form of the word "measured" appears in claim 45, but that is immaterial since the claim contains expressions similar to others we discuss hereinafter.

"measured" is used. It is done so in a confusing and inaccurate manner. A measurement is in no sense a computation, for the two are distinctly different operations. A measurement is the physical comparison between two tangible things; one, that which is to be measured in terms of the other; a physical standard. As properly used, the measurement of some physical thing by the application thereto of a physical standard is a proper manipulative or physical step in a process. But appellant's use of this term goes beyond the measurement of two physical things; one of which is a standard, and includes the so-called "measurement" of that which is the numerical difference between two abstract quantities. This is a computation and to designate the same as a measurement is inaccurate and misleading. This is the basis of the criticism of claim 37, in line 10, of the Examiner's Answer.

■ Appellant argues that this rejection for indefiniteness is "properly" before us only as to claims 23, 33, 37 and 49, "specifically mentioned in the Examiner's Answer," and claim 70. That argument is based on the contention that, as to the other claims, "the Examiner's bare statement that claim steps are indefinite * * * is not a rejection made in accordance with 35 USC 132 or Rule 104(b)" of the Patent Office Rules of Practice.[7] Appellant further urges that the only 35 U.S.C. § 112 rejection to which the board addressed itself was that of claim 37, step 1 (erroneously cited as claim 27 in appellant's brief).

We do not agree with appellant's contention that the rejection on indefiniteness can properly be considered only as to the claims he specifies. It is apparent that the examiner rejected all the claims as indefinite. Where similar recitations appear in different claims, as they do here, it was appropriate for the examiner to use some claims as examples in explaining the rejection. With regard to the examiner's listing of steps in many of the claims as indefinite, it seems to us that the reasons for the objections to those steps are sufficiently clear, particularly in light of the specific discussion of claims 23, 33, 37, 49 and 70. Moreover, the record does not reveal that appellant took any action to have the alleged deficiency in the rejection corrected prior to the decision of the boards. The quotation from the board's opinion hereinabove demonstrates clearly that, contrary to appellant's contention, the board itself sustained the rejection as to all claims. We will therefore treat the rejection for indefiniteness as having been applied to all claims, using as specific examples the claims so used by the examiner.

■ As in aforementioned companion appeal No. 8278, the indefiniteness rejection is grounded on the position that the claims fail to comply with the requirement of 35 U.S.C. § 112 for "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." In our opinion in that appeal we discuss the rationale of such a rejection at some length. We refer to that opinion and will not repeat our reasoning there other than to reiterate our conclusion that the requirement in question means that the claims must make it clear what subject matter they encompass.

Applying that standard to the present claims, we find no reversible error in their rejection for indefiniteness. Rather we find these claims fail, like those in the companion appeal, to set out certain of the process steps and their relationships to the other steps with sufficient particularity to provide reasonably clear definitions of processes for accomplishing the determination of position or velocity of moving objects which is attributed to them in the preambles. The

7. It is required by 35 U.S.C. § 132 that, whenever a claim is rejected, the Commissioner shall notify the applicant, "stating the reasons for such rejection." Rule 104(b) sets out a substantially identical requirement.

specification is of scant aid in understanding what is meant to be covered by the claims in many cases since the latter sometimes include terminology decidedly different from that used in describing the systems disclosed in the specification. In fact, we find it difficult to determine, in many cases, which one or ones of the various widely diverse forms of appellant's systems are intended to be covered by the claims.

Turning to claim 23 as a first example, the recitation of "measurements" of "changes in the magnitudes of geometrical properties of the geometrical configuration formed by straight lines connecting each of a number of fixed points to the moving object" is not clear in itself or in the light of the specification. The recitation does not establish relationships of the measurements or determinations to the other steps of the claims that will provide the result recited. Also, additional confusion is introduced into the claim by the recitation of computing "significant" positions "by trilateration," whereas appellant emphasizes in his brief that his process "differs from the methods of the prior art such as trilateration." [8]

We are likewise not satisfied that claim 33 so defines the steps therein, or the result to be accomplished, as to make clear what subject matter is encompassed thereby. The recitation of "measuring repeatedly" the change in distance specified "by observations of the doppler phenomenon" does not establish time or other relationships between the measuring operations made "repeatedly" that make it clear that the "data" obtained by use of the single transmitter and receiver will be adequate to permit "computing" the "position" of the object. It is also unclear from the claim whether it covers determining "position" in two dimensions or three dimensions, or both, or whether the process requires that unspecified restraints on the path of the

object be assumed, and reference to the specification does not resolve these uncertainties.

Turning next to claim 37, the examiner found inadequate the recitation of the step of measuring the "algebraic sums of changes of range." We agree that the claim is indefinite, not only because the quoted expression is not clear, but also because the recitation in the step including it, that the measuring is carried out "simultaneously and repeatedly," leaves it uncertain just what relationships between the various measurements are covered by the process of the claim.

In claim 49, the recitation of "[p]erforming doppler measurements relative to the motion of the moving objects and stations of the measuring system" leaves undefined the nature of the measurements or determinations relative to the object and stations that are to be made to determine the "positions and motions" of the moving objects and stations. Such language fails to make it definite what subject matter the claim encompasses.

As to claim 70, the obvious failure to recite steps adequate to perform the process specified results in indefiniteness. Even the single step recited is not sufficiently clear in the reference to the quantities measured being linearly related to increments in the unknown ranges from said reference points to the moving object.

Appellant's arguments on the merits of the indefiniteness rejection are directed largely to the contention that the word "measure", and the other forms thereof, has a broad enough meaning to be applicable to the steps he intends to cover in the claims. Even if the term is assumed to be broadly accurate, however, that does not overcome the indefiniteness of the recitations of the conditions to be "measured" and the absence of a defini-

---

8. It only adds to the uncertainty as to the claim's meaning that reference to "trilateration being applied" is made in the specification in connection with a very general discussion of possible modifications.

tion of the operative relationships between those conditions that are utilized to obtain the result specified in the preambles to the claims. To the extent that appellant's arguments are directed to the specific claims used as examples, we disagree with his contentions that the claims comply with the second paragraph of 35 U.S.C. § 112 for reasons apparent from the foregoing specific discussion of those claims. Furthermore, while some of the claims may, on their face, appear only broad and not indefinite, language used, when read in light of the disclosure, generates confusion. In summary, we are not convinced by appellant's arguments that the appealed claims are so particularly and distinctly drafted as to give a person of ordinary skill in the art a reasonably clear understanding of the subject matter encompassed thereby.

The rejection of the claims as drawn to non-statutory subject matter, based on 35 U.S.C. §§ 100 and 101, seems to be grounded on the conclusion that the claims rely for patentability on steps that are "primarily" mental steps (examiner) or "non-physical" steps (board), and on an interpertation of the *Abrams* case [9] as barring the grant of a patent in such circumstances. In support of their position, the examiner and the board undertook to compare appellant's process with those of the Kohler and Grimm patents. A major point of disagreement seems to lie in the relationship of those reference processes to the subject matter *claimed* here. However, the indefinite nature of the claims in their present condition renders the question of non-statutory subject matter moot. Accordingly, we will not decide that question.

In summary, the rejection of claim 69 as unpatentable over Grimm is sustained as is the rejection of claims 4–55 and 58–70 for failure to comply with 35 U.S.C. § 112.

The decision of the board is affirmed.

Affirmed.

---

9.  In re Abrams, 188 F.2d 165, 38 CCPA 945 (1951).